IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TERESA BREWER LAMONDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:09-CV-962 |
| | ) | |
| J. T. PIERCE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

Plaintiff Teresa Lamonds has sued Defendant J.T. Pierce in his official capacity as a sergeant with the Candor, North Carolina, Police Department, alleging excessive force during an arrest and malicious prosecution. The Court concludes that Defendant's motion for summary judgment should be granted because Ms. Lamonds has presented no evidence that any excessive force was closely related to municipal policy and because Sergeant Pierce had probable cause to charge her.

## FACTS[1]

In May 2009, Candor police officer Grantland Jackson stopped Ms. Lamonds for speeding and issued her a warning ticket. (Doc. 29-3 at 78-79, 84.) Soon after the stop, Ms. Lamonds went to Town Hall to complain about Officer Jackson and the manner in which he had spoken to her. (*Id.* at 92-93, 95.) While at Town Hall, she told a town employee, "If [Officer

---

[1] As is appropriate in connection with a summary judgment motion, the Court will view the evidence in the light most favorable to Ms. Lamonds, the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Jackson] ever pulls me and talks to me again like he did, somebody, and it might be me, is going to be kicked in the ass." (*Id.* at 101; Doc. 29-6 at 90.) Ms. Lamonds asked that either the mayor or the chief of police contact her by the end of the day to discuss her dissatisfaction with the police. (Doc. 29-3 at 95, 104.)

Meanwhile, shortly after Officer Jackson let Ms. Lamonds go, he stopped her husband, John Lamonds, in front of an elementary school for following Officer Jackson's police car too closely. (Doc. 29-1 at 89-91; Doc. 29-3 at 93.) Ms. Lamonds left Town Hall and headed to where her husband was stopped. (Doc. 29-3 at 104.) When she arrived, she rolled her window down and spoke to her husband, who was on the other side of the street; she yelled that she "was tired of this shit going on with the town police," had "raised a little bit of hell" at Town Hall, and was expecting a call from the mayor or the chief of police. (*Id.* at 103, 105, 131-32.) Officer Jackson was sitting inside his police car during at least part of this exchange, (*id.* at 103), but Ms. Lamonds was speaking loudly enough for Officer Jackson to hear her remarks. (Doc. 29-1 at 90.) The traffic stop had not yet ended. (*Id.* at 62-63, 91.)

Later that day, the Candor Chief of Police directed Sergeant Pierce to visit the Lamonds' business and speak with Mr. and Ms. Lamonds about their complaint. (Doc. 29-2 at 52-53.) Sergeant Pierce was off duty, was not carrying a badge or other identification, and was wearing plain clothes at the time. (*Id.* at 63-64.) Sergeant Pierce introduced himself to Ms. Lamonds as a member of the Candor Police Department and said he was there to discuss her complaint. (*Id.* at 93-94; Doc. 29-3 at 108.) They agreed that Ms. Lamonds and her husband would visit the police station shortly to make a formal complaint. (Doc. 29-3 at 109.) According to Ms. Lamonds, Sergeant Pierce then shut the door to the office, told her to sit down and keep her mouth shut, and began cursing at her and lecturing her. (*Id.* at 110-11.) She told Sergeant Pierce to leave but

2

he refused. (*Id.* at 110.) Over the course of the exchange, Ms. Lamonds became uncertain as to whether Sergeant Pierce was in fact a police officer, as he had not shown her any identification. (*Id.* at 111, 118.) Ms. Lamonds walked toward the door but Sergeant Pierce blocked her path; she put her finger in his chest and said, "[O]ne of us are leaving." (*Id.* at 110-11, 117-18.) Sergeant Pierce then told her she had assaulted a police officer, twisted her arm, threw her on the floor, and jumped on top of her. (*Id.* at 111.) The physical altercation continued until Ms. Lamonds broke free, ran out of her office, and screamed for help. (*Id.* at 111-12.)

Officer Jackson arrived on the scene and he and Sergeant Pierce arrested Ms. Lamonds. (*Id.* at 120-21; Doc 32 at 24-27.) She was charged with communicating threats, resisting an officer, assaulting an officer, and two counts of disorderly conduct—one count for her conduct at Town Hall and one for her conduct at the location where Officer Jackson stopped her husband. (Doc. 29-3 at 127.) She was convicted of communicating threats and resisting an officer; the remaining counts resulted in either an acquittal or a dismissal. (Doc. 29-6 at 106-07.)

## ANALYSIS

1. **Excessive Force Claim**

In order to recover on an excessive force claim arising out of an arrest in a suit against a law enforcement officer in his official capacity, a plaintiff must prove that:

a) the degree of force used violated the Fourth Amendment's prohibition against unreasonable seizures, *Graham v. Connor*, 490 U.S. 386, 394 (1989);

b) the deprivation occurred because of or through an official policy or custom, see *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)); *Hughes v. Blankenship*, 672 F.2d 403, 406 (4th Cir. 1982); and

3

c) the deficient municipal decision, policy, custom, or practice in question "reflect[s] deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow," *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 411 (1997), and is "closely related to the ultimate injury." *City of Canton v. Harris*, 489 U.S. 378, 391 (1989).

Ms. Lamonds contends that when the police chief directed Sergeant Pierce to investigate her complaint, even though he was in plain clothes and had no other way to identify himself as law enforcement, this direction constituted an official policy sufficient to support her § 1983 claim. *See Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (explaining that a police chief's acts or omissions alone may be enough to constitute a policy or custom within the meaning of § 1983). First, it is doubtful that a decision to send a sergeant to investigate a complaint in plain clothes and without identification can be characterized as deliberately indifferent to Ms. Lamonds' constitutional rights. Moreover, there is no evidence that the excessive force Ms. Lamonds allegedly suffered was a direct result or natural consequence of the decision to send Officer Pierce to investigate while in plain clothes. *See id.* (explaining causation requirement in municipal liability context). Nothing about the police chief's direction suggested an invitation or official mandate for Officer Pierce to engage in excessive force.

As a matter of law, Ms. Lamonds' evidence does not establish that an official policy or custom of the Town of Candor was closely related to the excessive force she alleges she suffered. Because she cannot prove all the elements of her § 1983 claim, it should be dismissed.

### 2. Malicious Prosecution Claim

To prove a claim for malicious prosecution in North Carolina, a plaintiff must establish: "(1) [that] the defendant initiated the earlier proceeding; (2) malice on the part of the defendant

4

in doing so; (3) lack of probable cause for the initiation of the earlier proceeding; and (4) termination of the earlier proceeding in favor of the plaintiff." *Kirschbaum v. McLaurin Parking Co.*, 188 N.C. App. 782, 789, 656 S.E.2d 683, 687-88 (2008) (internal quotation marks omitted). Because the record establishes that there was probable cause to charge Ms. Lamonds, the Court need not address the other elements.

In the malicious prosecution context, probable cause is "the existence of such facts and circumstances, known to the defendant at the time, as would induce a reasonable man to commence a prosecution." *Nguyen v. Burgerbusters, Inc.*, 182 N.C. App. 447, 451, 642 S.E.2d 502, 506 (2007) (internal quotation marks omitted). "It is not essential that the person bringing the action 'knows the facts necessary to insure a conviction, but that there are known to him sufficient grounds to suspect that the person he charges was guilty of the offense.'" *Gupton v. Son-Lan Dev. Co.*, 205 N.C. App. 133, 138, 695 S.E.2d 763, 768 (2010) (quoting *Petrou v. Hale*, 43 N.C. App. 655, 657, 260 S.E.2d 130, 133 (1979)). "[W]here the facts are admitted or established, the existence of probable cause is a question of law for the court." *Best v. Duke Univ.*, 337 N.C. 742, 750, 448 S.E.2d 506, 510 (1994).

Ms. Lamonds contends that as to those charges on which she was acquitted—assaulting an officer and two counts of disorderly conduct—there was no probable cause.[2] As to the assault charge, however, it is undisputed that Ms. Lamonds initiated physical contact with Sergeant Pierce by poking him in his chest and saying, "[O]ne of us is leaving." (Doc. 29-3 at 110-11,

---

[2] Ms. Lamonds does not contend that she was falsely arrested. (Doc. 50 at 14 n.8.) She also concedes that her malicious prosecution claim is not viable for the charges on which she was convicted. (Doc. 50 at 14-16.) Sergeant Pierce contends that a malicious prosecution claim cannot be "broken down into separate charges and survive despite a conviction as to some of the charges." (Doc. 52 at 9.) The Court assumes, without deciding, that Ms. Lamonds is correct that she may proceed with a malicious prosecution claim for the charges on which she was not convicted, subject, of course, to satisfaction of the other required elements.

5

117-18.) These actions provide sufficient grounds for a reasonable person to suspect that she was guilty of assaulting a police officer. *See State v. O'Briant*, 43 N.C. App. 341, 344, 258 S.E.2d 839, 841 (1979) (defining criminal assault to include "a show of violence . . . sufficient to cause a reasonable apprehension of immediate bodily harm" (internal quotation marks omitted)).

The evidence viewed in the light most favorable to Ms. Lamonds also establishes probable cause to believe she twice committed the offense of disorderly conduct. By statute, disorderly conduct includes a public disturbance caused by "[m]ak[ing] or us[ing] any utterance, gesture, display or abusive language which is intended and plainly likely to provoke violent retaliation." N.C. Gen. Stat. § 14-288.4(2). "Loud and boisterous" protests against the manner of an arrest and "profane, racist, and vulgar epithets" are sufficient to establish probable cause to arrest for disorderly conduct. *State v. McLoud*, 26 N.C. App. 297, 300, 215 S.E.2d 872, 874-75 (1975). Profane protestations against a parking ticket accompanied by a threat are sufficient to constitute disorderly conduct. *State v. Cunningham*, 34 N.C. App. 72, 76, 237 S.E.2d 334, 337 (1977). Loudly insulting a teacher in the hallway of a school is sufficient to constitute disorderly conduct. *State v. Tucker*, 164 N.C. App. 232, 595 S.E.2d 452, 2004 WL 943775, at *2 (May 4, 2004) (disposition published in reporter table; opinion unpublished). Profane outbursts in a convenience store parking lot are sufficient to establish probable cause to arrest for disorderly conduct. *State v. Raley*, 155 N.C. App. 222, 573 S.E.2d 774, 2002 WL 31894939, at *3-4 (Dec. 31, 2002) (disposition published in reporter table; opinion unpublished).

Given this well-established case law in North Carolina, there was probable cause to charge Ms. Lamonds with two counts of disorderly conduct. Her protestations and comments at Town Hall and on the street were loud and boisterous. Her comments at the Town Hall involved a threat, and her comments on the street outside an elementary school involved profanity and

6

were made during the middle of a traffic stop.  While not the most inflammatory comments ever made, they are quite reasonably viewed as utterances likely to provoke violent retaliation.  *See Cunningham*, 34 N.C. App. at 76, 237 S.E.2d at 337 (explaining that the relevant inquiry is whether the utterances "were likely to provoke the average person to retaliation," not "a police officer . . . expected to show restraint" (internal quotation marks omitted)), and it was reasonable for Sergeant Pierce to suspect that Ms. Lamonds intended to provoke violent retaliation.

Because the charges of assaulting a police officer and disorderly conduct rested on probable cause, Ms. Lamonds cannot prove her claim for malicious prosecution.  Summary judgment for the defendant is appropriate.

In reaching this conclusion, the Court does not rely on the deposition testimony or report of Defendant's expert witness Isaac T. Avery, III, (Doc. 29-5); Plaintiff's motion to strike (Doc. 48) Mr. Avery's report is therefore moot.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Sergeant Pierce's Motion for Summary Judgment, (Doc. 29), is **GRANTED**, and Plaintiff's Motion to Strike the Affidavit of Isaac T. Avery, III, (Doc. 48), is **DISMISSED AS MOOT**.

This the 15th day of February, 2013.

UNITED STATES DISTRICT JUDGE

7

Case 1:09-cv-00962-CCE-LPA   Document 53   Filed 02/15/13   Page 7 of 7